Argued November 7; suspension ordered November 21, 1939

# In re DICKEY
### (96 P. (2d) 205)

Department 1.

*M. B. Meacham*, of Portland, for Oregon State Bar.
No appearance for Marion E. Dickey.

KELLY, J.  On July 20, 1937, a complaint was filed
with the Board of Governors of the Oregon State Bar
charging the defendant, Marion E. Dickey, with un-
ethical and unprofessional conduct in conducting the
sale of certain corporate stock belonging to one George
A. Morgan and in failing to account promptly to said
Morgan for the proceeds of said sale.

On or about November 8, 1937, a supplemental complaint was filed with said board of governors charging defendant with unprofessional conduct in that he, the said defendant, was therein alleged to have received $100 from one Frank P. Dennison to be used by defendant in immediately instituting an annulment suit, which defendant failed to institute; and that defendant also failed to account to said Dennison for said $100 or to return the same to him.

On December 14, 1937, a hearing was held before a duly appointed trial committee. This trial committee reported that the record was insufficient to justify the determination that defendant had been guilty of a felonious misappropriation or conversion of his client's funds; but the trial committee also made a finding that defendant had been guilty of gross unprofessional conduct and breach of trust in that he failed to deal frankly with his client, the said George A. Morgan, or to render any proper or adequate accounting to said client.

It also appears that in August, 1937, a settlement was had between Mr. Morgan and defendant; and that, subsequent to said hearing, final payment was made by defendant settling said claim in full.

No incriminating testimony was offered in reference to the charge made in said supplemental complaint.

Extenuating circumstances were recounted by said trial committee and by its report dated January 4, 1938, said trial committee recommended that defendant be reprimanded; that the proceeding be continued for a period of two years from the date of said complaint; that if there should be no further misconduct during that period the proceeding thereupon automatically be closed, but in the event of further misconduct by de-

fendant during that period, an appropriate penalty in this proceeding be imposed without consideration of the extenuating circumstances so recounted.

On February 17, 1939, another complaint against defendant was filed by the Oregon State Bar before its board of governors, wherein defendant is charged with unprofessional, unethical and unlawful conduct in two causes of complaint.

The first cause of complaint charges that during the month of July, 1936, one Frank A. Weaver, of Seattle, Washington, gave to defendant for collection a claim in the amount of $150 against the Lewis Investment Company; that said Weaver gave defendant no permission or authority to compromise or settle said claim for any lesser sum; but defendant thereafter compromised said claim for the sum of $90, and that said defendant received said sum of $90 for and on behalf of his said client; has refused to pay over the same or any part to his said client, but has commingled the aforesaid sum of money with his own money and converted the same or so much thereof as is not represented by an agreed attorney's fee to his own use and benefit.

The second cause charged defendant with having possession of $20 belonging to a client who filed a pauper's oath in bankruptcy containing a statement that he had no money nor any means of obtaining money with which to pay court costs and expenses. At the time this oath was made an order was given defendant by his client upon a debtor of said client, which thereafter was accepted by said debtor.

On June 1, 1939, a hearing was had upon the complaint last above mentioned whereupon the trial committee found defendant not guilty upon the second

cause, and made the following findings upon the first cause of complaint:

"(1) The first cause of complaint charges the accused with having settled without authority for $90 a claim of one Frank A. Weaver in the sum of $150 against the Lewis Investment Company, and that the accused commingled the amount collected, $90 with his own funds and converted the same to his own use and benefit. The accused in his answer generally denied the complaint.

The evidence of Mr. Weaver taken on deposition at which the accused did not appear, although notified, shows that the accused was retained by Mr. Weaver to prosecute a claim of $175 against the Lewis Investment Company; that prior to Mr. Weaver's retention of the accused attorney, that he, Weaver, had had an opportunity to settle the claim for $100, and later for $75 and that he told the accused attorney if he would collect the $175 he could retain $25 as his attorney's fee for the settlement; that the accused attorney without any authority and without the knowledge of Mr. Weaver settled the claim for $90, deposited the money in his own bank account and claimed that his bank account was later attached by his (Dickey's) own creditors, making it impossible for him to account to his client for the amount collected. Weaver testified that on an average of about once a month he contacted Dickey for the purpose of collecting the $90, but Dickey failed to pay the same and on one occasion promised to meet him in Seattle, but did not keep his engagement. Dickey claimed that he had a sum of money coming from a deal that was in escrow but nothing ever materialized from that or any other source.

We find that the accused attorney did settle said claim without authority, and without the knowledge of his client, and that he commingled the amount collected, $90, with his own funds and converted it to his own use and benefit."

The trial committee, which heard the testimony given upon the hearing held on December 14, 1937, incorporated in its report the following statement:

"Dating back to 1934 the accused attorney has suf-ferred from a series of physical mishaps and illnesses. These include a nervous breakdown, which kept him confined to the hospital and to his home for three months in the fall of 1934, and impaired his ability to take care of his office work for some time thereafter. Then came a serious automobile accident, from which he is still partly crippled. More recently he has suffered from attacks of influenza. All of this apparently has resulted in a substantial absence from his office during each of the years 1934, 1935, 1936 and 1937, and a consequent disorganization of his office and of his professional activities. Eventually these mishaps and misfortunes, together with alcoholism which developed after the accident and as a relief from drugs administered to alleviate pain, resulted in the removal of his office from a downtown office building to his home in October, 1937. The accused attorney testified he had discontinued the use of alcoholic beverages for a period of three months last past, and that he is convinced that with the assistance of his wife he has overcome the habit."

■ We feel justified in taking into consideration the extenuating circumstances thus shown. We also give consideration to the statement made by defendant to Mr. Weaver to the effect that he had deposited the funds derived from the Weaver claim in a bank in defendant's name, and that the bank deposit had been attached by a creditor of defendant. There is no testimony in the record, which refutes that statement. We must not be understood as holding that these extenuating circumstances justify the defendant's misconduct or that he could relieve himself of liability by depositing his client's money in a bank to his own credit. On

the contrary, he should have accounted to his clients promptly upon the receipt of money collected or received by him for them.

■ We note the foregoing extenuating circumstances because one member of the second trial committee gave them weight in recommending suspension of defendant instead of disbarment.

We think that it will be in accord with recent holdings of this court [*Ex parte Eastman*, 155 Or. 15, 62 P. (2d) 27; *In re Shenker*, 162 Or. 681, 94 P. (2d) 724; *In re Irwin*, 162 Or. 221, 91 P. (2d) 518], and that the ends of justice will be subserved by imposing a penalty of suspension, the period of such suspension to begin at once and to continue for a term of two years after full restitution shall have been made, both to Mr. Weaver and to the party who advanced to defendant the $100 for instituting the Dennison annulment proceedings; and it is so ordered.

RAND, C. J., and BAILEY and ROSSMAN, JJ., concur.